## YAKELEY v. SMITH.

---

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE.

In an interference involving priority of invention of an ornamental design for artificial bait, it was *held*, on a review of the evidence, and reversing a decision of the Commissioner of Patents, that the testimony of one of the parties, corroborated by four credible witnesses, showed that he conceived the invention and reduced it to practice before his adversary, and was therefore entitled to an award of priority.

No. 1159.    Patent Appeals.    Submitted November 11, 1918.    Decided December 2, 1918.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.              *Reversed.*

The facts are stated in the opinion.

*Mr. T. K. Bryant, Mr. Howard P. Denison,* and *Mr. Eugene A. Thompson* for the appellant.

*Mr. Willard L. Pollard, Mr. W. Clyde Jones,* and *Mr. Coy W. Hendrix* for the appellee.

Mr. Chief Justice Smyth delivered the opinion of the Court:

From a decision of the Patent Office awarding Smith priority of invention in an interference proceeding Le Roy Yakeley appeals. The subject of the contest is an ornamental design for artificial bait. The Examiner of Interferences found in favor of Yakeley. The Examiners in Chief and an Assistant Commissioner found against him.

Fillmore M. Smith made no attempt to prove conception and reduction to practice before December, 1913, while Yakeley claims conception before June, 1913, and reduction to practice in that month and also in August of the same year. If he has established reduction to practice in either month he must prevail over Smith, and therefore we will proceed at once to consider the testimony produced by him.

Yakeley called a number of witnesses, who supported his contention. Smith says that the witnesses were mistaken as to the year,—that the reduction to practice about which they testified took place in August, 1914, instead of 1913. In the argument at the bar counsel for Smith repeatedly said that the witness Lyons, who testified in behalf of Yakeley, was a truthful man, but mistaken as to the year of the occurrences about which he spoke. In view of this let us see whether or not Lyons is correct.

He swore positively that he fished with the Yakeley bait at Sandy Pond in August, 1913; that he was accustomed to go there on a fishing trip in August of each year; and that he knew he was there in August, 1913, because of this custom and also because he was called home on the 26th of that month by the death of his little grandchild, who died on that date, as shown by the vital statistics of Syracuse, New York, where all the parties resided and near which Sandy Pond is located. In view of this we do not think he was mistaken as to the year in which he used the baits, but his testimony is not alone.

Lyons further said that in June, 1913, he was president of a corporation engaged in general wood working; that Yakeley came to him and asked to have some wooden plugs manu-

factured, which were to be used for fish baits; that he took Yakeley to his foreman, Edmund Hope, who had worked for him about twenty years, and asked him to do the work which Yakeley desired. Lyons says that Hope turned the work over to Biehler, a journeyman in the shop, who made the wooden baits as directed by Yakeley. Biehler testified that he was in the employ of Lyons as a wood turner in 1913; that Yakeley, Hope, and Lyons came to him and showed him a crude model and asked him to turn one like it as near as he could, Yakeley giving instructions as to what he wanted done. He did the work, making about three or four baits. The invention of the issue he identified as similar to one of the baits which he had turned out. This occurrence he placed in 1913, because, as he said, he left the employ of Lyons along about December of that year,—sometime before Christmas.

Hope fully supports Lyons and Biehler in this respect. He said that he remembered very clearly the transaction which they referred to, and that it took place in June, 1913, because he went to Sandy Pond that year during the first week in August for his vacation. A canceled check dated August 6, 1913, by which, according to his statement, he had paid his hotel bill, was produced by him. In 1914 he had but four days' vacation, he said, and spent that time in Ontario county. His 1915 vacation was passed in New York. Thus he established with comparative certainty that he saw the bait of the issue in August, 1913, if not also in June of that year. Another witness, Dr. Houde, said that he was at Sandy Pond in August, 1913, when Lyons was there, and saw him use the baits of the issue; that he remembers the year on account of the fact that while there he was summoned to his home by the expected birth in his family of a child and that the child was born August 22.

These witnesses had no motive for misrepresentation. They testified in January, 1916, two years and about four months after the occurrences referred to by them. It is not likely, in view of the circumstances by which they fixed the date, that they would have made a mistake of a year. Counsel for

D. C.]              *              Syllabus.

Smith sharply analyze their testimony, and point out what counsel conceive to be defects therein tending to indicate that they erred as to the year.    The witnesses may not have recalled correctly all the details of the transactions about which they testified, but this would not justify a holding that their memories were at fault concerning the salient features of the transactions.

We believe that Yakeley conceived the intention of the issue in the early part of 1913 and reduced it to practice, if not in June, then certainly in August of that year, which entitles him to priority over the earliest date claimed by Smith.    For this reason the decision of the Patent Office is reversed and priority of the invention of the issue is awarded to Yakeley.

*Reversed.*